Edward Guobell, J.
This motion, dated March 24, 1971 and returnable at Special Term, Part I on April 9,1971, is an application on behalf of the plaintiff to vacate the dismissal of the action at Trial Term Part 31 on September 23, 1970, as a result of the failure of plaintiff’s counsel to answer the calendar on that day.
The reason for the default as stated by counsel for the plaintiff is that1 ‘ your deponent through an inadvertence did not see this action in the Law Journal for this date and place.”
*771 In addition to the claim of inadvertent oversight the plaintiff’s counsel seeks to have the court share the onus of default on the ground that he did not receive a telephone call from the court “ On September 23,1970 advising your deponent that this action was on the calendar for this date.” Counsel further states in this connection that ‘ ‘ your deponent is of the belief that the Administrative Judge of the Civil Court has advised the Trial Term judges to inform an attorney one time of a failure to appear and advise him to appear on a subsequent date ’ ’ and that “ this practice was not followed in this case.”
I accept counsel’s statement that he did not receive a telephone call from the court while the case was pending in Trial Term Part 31, prior to the dismissal. The question is whether that is a ground for vacating the dismissal.
The “ advice ” of the Administrative Judge to the Trial Term Judges respecting telephone calls to which plaintiff’s counsel refers in his moving affidavit, is a directive dated May 5, 1970, addressed by the Administrative Judge to “ Calendar Clerks and to Clerks of Special Term, Part I (All Counties) ” stating in part that “ Cases on Conference Part calendars shall not be dismissed or an inquest taken unless the defaulting party has been notified by phone of its default and given an opportunity to appear. Where a second default occurs, the circumstances shall be noted on the record and the disposition noted as well. ’ ’
For two reasons, in my opinion, this directive does not furnish the basis for the vacating of the dismissal. One reason is that the directive was not adopted to serve such a purpose and the second is that in any event, in the circumstances of this case, the Calendar Clerk was not required to make the telephone call.
1. The directive, as noted, is addressed to the Clerks of the court and is a part of the internal regulations governing the operations of the court. It is a measure adopted for the benefit of the court so as to minimize the burden of time and effort on the part of its personnel, including Judges, that necessarily is involved in the submission, consideration and disposition of applications to vacate defaults.
It creates no rights in favor of the parties to an action nor does it impose any duty on the part of the court or its personnel with respect to them.
It is not intended to relieve counsel of the duty of watching calendars nor is it intended to make the court’s personnel adjuncts of the calendar watching services.
Accordingly the directive in question has not changed the established rule that defaults will not be vacated in the absence of a showing of a meritorious cause of action or defense and a *772 satisfactory explanation for the default other than the failure of the court to notify the litigants that the action is on the calendar for a particular date.
It may not be inappropriate to add a comment here from a practical point of view. It appears to be counsel’s premise that every attorney is entitled to one telephone call from the court before a dismissal can take place. As has been noted, plaintiff’s counsel states in his moving affidavit that it is his belief that the ‘ ‘ Administrative Judge of the Civil Court has advised the Trial Term Judges to inform an attorney one time of a failure to appear and advise him to appear on a subsequent date.”
That suggestion, when measured by the reality of the Civil Court’s business, obviously lacks validity.
The Civil Court of New York City is the world’s busiest civil court. On January 1,1970 it had 136,925 pending cases. During 1970, 124,209 cases were added to that load. In that same year the court disposed of 195,166 cases. (See Journal of American Insurance, May-June, 1971, pp. 22-24.)
If, despite the tremendous volume of litigation processed by the Civil Court, the interpretation sought by counsel were to be adopted and every attorney with a case in the Civil Court were to be entitled to one telephone call before dismissal or inquest, it is apparent that the burden upon the court and its personnel would be so heavy in terms of time and expense that the application of the directive would be completely impractical.
For practical reasons, therefore, as well as principle, the responsibility for watching calendars was not intended to shift and was not shifted by the directive from counsel to court. The directive did not modify that responsibility and it did not relieve counsel of the risks that are inherent in failure to perform their obligation to watch calendars.
2. Even if the assumption should be adopted, as the plaintiff’s counsel appears to urge, that he is entitled to one telephone call from the court as of right, the giving of that call prior to dismissal on September 23,1970 was not warranted in the circumstances of this case.
The action was commenced on July 10, 1968, issue was joined on December 4, 1968 and the action was noticed for trial on February 7, 1969.
On May 22,1969 the action was dismissed because of the failure of plaintiff’s counsel to appear. On November 9, 1969 a motion was made on behalf of the plaintiff, returnable at Special Term Part I on December 2, 1969, to restore the case to the Trial , Calendar on the ground that counsel’s failure to answer the calendar “ was due to an oversight in deponent’s office and for *773 no other reason. ’ ’ That motion was granted without opposition by order of this court restoring the cause ‘ ‘ to the appropriate calendar of February 2,1970.”
It appears from the court’s record that the case was thereafter adjourned to February 10th, to March 23rd, to May 13th and finally to June 18th in Trial Term Part 3.
In June 1970, Part 3 was a Conference and Assignment Part. On June 18, 1970, Judge Marks, then presiding in Part 3, assigned the case to me for trial in Part 4, a Trial Part, where I was then sitting. The case was not reached for trial in June 1970 and was carried by me to the September 1970 term at which time I was the Conference and Assignment Judge in Part 31. It was there on September 23,1970 that the dismissal took place.
The point of this recital is that it leads to the practical operation of a pertinent phase of the conference and assignment method of disposition of cases inaugurated by Mr. Justice Thompson, the Administrative Judge of the Civil Court. It provides for teams of three Judges who sit in rotation as Conference Judges and then as Trial Judges. Cases appear first on the calendar of the Judge presiding in the Conference and Assignment Part. If they are not settled as a result of conference they are assigned for trial by the Conference Judge to the two members of his team then sitting as Trial Judges. The cases so assigned remain with the Trial Judge to whom they have been assigned until final disposition, generally by settlement or trial, occasionally by dismissal or inquest.
Under this system, after a case has been noticed for trial, counsel is notified that the case is about to be reached for conference with the Conference Judge by a notice published in the New York Law Journal. The notice so printed states the calendar number and title of the case, the number of the Conference Part in which it will be conferenced, the name of the Conference Judge and the date of the conference. As previously stated, in the event that the conference does not result in settlement, the Judge presiding in the Conference Part assigns it for trial to one of the two Trial Judges of his team.
It is at this point when the case appears on the list published in the New York Law Journal of cases placed on the calendar of a Conference Part, that the directive of May 5, 1970 regarding telephone calls becomes operative on the theory that attorneys may miss or overlook the notice printed in the New York Law J ournal.
Once counsel is aware of the fact that the case for which he is responsible is in a Conference Part there is no longer any need for further notice to him and there is no longer any reason under *774 the directive for the making of a telephone call to him. From that point on counsel knows or should know where his case is. He knows or should know that it will either be settled in the Conference Part or assigned for trial' by the Conference Judge to one of his two team mates sitting as Trial Judges. He also knows or should know that if the latter event occurs, the case will be retained by the Trial Judge to whom it has been assigned until final disposition, regardless of whether the Trial Judge in the interim and during the course of the rotation process should act for a period as the Conference Judge.
In the present case it is fair to conclude that since the case was assigned by the Conference Judge to a Trial Judge that counsel was aware that his case was involved in the process of being settled or tried since the assignment to the Trial Judge is made by the Conference Judge only if counsel for both sides have conferred and conference has failed to resolve differences by settlement.
In any event, as noted, if any benefit accrues to counsel as a result of the directive it is incidental to the objective of simplifying and expediting the court’s work, imposing no duty on the part of the court to counsel, nor Conferring any right upon counsel with regard to telephone calls. Counsel, as stated, continues to have the duty to watch the calendar, and must bear the risk that may follow a failure to do so. The court does not assume or share that responsibility.
3. Despite my conclusion that the directive confers no right upon counsel and that, in addition, it is inapplicable in the circumstances of the present case, it is my opinion that the case should be restored to the calendar for trial for the reason that the plaintiff’s affidavit shows a viable cause of action.
In Israelewitz v. Monasch (Civ. Ct., Spec. Term, Part I, June 1, 1970, affd. by Appellate Term, N. Y. L. J., April 5, 1971, p. 2, col. 1, it was said that “ In the case at bar, plaintiff’s affidavit of merit shows a viable cause of action, and it further appears lhat the defendant will not be prejudiced thereby. In Sortino v. Fisher (20 A D 2d 25) on page 32, the court stated: ‘ It stands to reason that the greater the merit of the case the more excusable the delay and the greater would be the injustice of dismissal. ’
‘ ‘ Further, the courts have held that where ¡there is a weak excuse or no excuse at all but the plaintiff has set forth evidentiary facts, which, if true and proven, establishes a strong and meritorious cause of action, the case would not be dismissed. (See Friedman v. Fortgang, 21 A D 2d 779 ; Giordano v. St. Claire’s Hosp., 24 A D 2d 568.) ”
*775 However, restoration should be on terms in view of counsel’s casual approach to the observation and supervision of the progress of the case towards trial. This is the second time in the history of this case that dismissal has taken place due to ‘1 inadvertence ” or “ oversight ”, with the consequence that opposing counsel and the court have been burdened twice by applications to restore. Counsel, moreover, has been dilatory in the making of the present motion. Although dismissal took place on September 23,1970, the motion to restore was not made until March 24,1971.
Accordingly, the plaintiff’s motion is granted to the extent of restoring the action to trial on September 7, 1971 at Trial Term Part 6, but upon the condition that plaintiff’s attorney pays $100 to defendant at the office of counsel for the latter within 15 days from date of entry of this order. (See Wolf v. Associates Discount Corp., 12 A D 2d 241 ; Israelewitz v. Monasch, supra.) If the costs are not paid this motion is denied.